

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LAURA HEDGEPETH, Individually and on behalf of her husband, WESLEY HEDGEPETH | CIVIL ACTION NO. 07-2220 |
| VERSUS | JUDGE DONALD E. WALTER |
| GLAXOSMITHKLINE, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Remand to the First Judicial District Court, Caddo Parish, State of Louisiana, or in the Alternative, Motion for Leave to Amend Petition, or in the Alternative, Motion to Stay the Proceedings [Doc. #7] filed on behalf of plaintiff, Laura Hedgepeth, individually and on behalf of her husband, Wesley Hedgepeth. Defendant, SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK") opposes this motion. For the reasons assigned herein, plaintiff's motion is **DENIED** in all respects.

## STATEMENT OF THE CASE

On October 3, 2007, plaintiff, Laura Hedgepeth, individually and on behalf of her husband, Wesley Hedgepeth, ("Hedgepeth"), originally brought this Louisiana products liability action in the First Judicial District Court, Parish of Caddo, State of Louisiana, against GlaxoSmithKline ("GSK") and Wyeth Laboratories, as the developers, manufacturers, promoters, marketers, sellers and distributors of the drugs Paxil and Effexor, respectively. Plaintiff alleges that her husband's ingestion of the prescription medications Paxil and Effexor resulted in his committing suicide. See Petition for Damages, ¶¶4-6.

On December 11, 2007, Hedgepeth amended her Petition to add the following allegation:

> On or about October 1, 2007, a claim was filed alleging medical negligence and is presently ongoing as PCF File No. 2007-01167. The circumstances as alleged in PCF No. 2007-01167 sound in medical negligence and arise out of the same series of transactions and/or occurrences and have common questions of law and fact as the claims alleged in the original petition for damages filed in this matter on October 3, 2007.

First Suppl. and Amending Petition, ¶IV.[1] Plaintiff also amended her Petition to add service information for GSK and Wyeth Laboratories, and to correct a typographical error in Paragraph 21 which mistakenly referenced an unrelated entity, i.e., Boston Scientific, as opposed to GSK and Wyeth Laboratories.

On December 20, 2007, defendant GSK, with the written consent of co-defendant, Wyeth Laboratories, timely removed this matter pursuant to 28 U.S.C. §1441 based on this Court's diversity jurisdiction, see 28 U.S.C. §1332(a). Specifically, GSK asserts that the amount in controversy exceeds the $75,000.00 threshold, and that complete diversity exists as between plaintiff and the named defendants, GSK and Wyeth Laboratories. See Notice of Removal, ¶¶4-7. At the time the Original Petition was filed, plaintiff, Laura Hedgepeth, was a Louisiana citizen, as was her deceased husband. Notice of Removal, ¶5. GSK alleges that it is incorporated and has its principal place of business in Pennsylvania, while Wyeth Laboratories, as a predecessor entity to Wyeth Pharmaceuticals, an unincorporated division of Wyeth, is a Delaware corporation with its principal place of business in New Jersey. Id., at ¶¶6-7. The citizenship of named defendants, ABC Insurance Company and DEF Insurance Company, was disregarded for purposes of determining diversity as

---

[1] Pursuant to the Louisiana Medical Malpractice Act, La. R.S. 40:1299.47 ("LMMA"), medical malpractice claims against qualified health care providers must first be presented to a medical review panel for administrative review before a malpractice suit can be properly filed against the health care provider in court.

they are fictitious entities. 28 U.S.C. §1441(a).

On January 22, 2008, Hedgepeth filed the Motion to Remand presently before this Court asserting that complete diversity of citizenship is lacking based on plaintiff's potential medical malpractice claim against Wesley Hedgepeth's prescribing physician, Dr. Paul Rushing, a Louisiana citizen, and his Louisiana insurer (collectively referred to as "Dr. Rushing"). Plaintiff alternatively seeks leave to amend her Original Petition to add Dr. Rushing and his insurer as defendants or, alternatively, asks the Court to stay this matter until the procedural bar to her medical negligence claim is removed. This Court finds that diversity jurisdiction exists, and that neither amendment of the Petition nor stay of this action is warranted.

## LAW AND ANALYSIS

### I. Motion to Remand.

To determine whether jurisdiction is present for removal, the Court must consider the claims in the state court petition "as they existed at the time of removal." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see also Campbell v. Stone Insurance, Inc., 509 F.3d 665, 669 n. 2 (5th Cir. 2007). In the case sub judice, Hedgepeth named only diverse defendants in her state court Petition and First Supplemental and Amending Petition. It is undisputed that the jurisdictional threshold is met,[2] and that defendants' petition for removal was timely filed.

This Court has reviewed all of the cases cited by both plaintiff and defendants and, like

---

[2] See Plaintiff's Motion for Remand, ¶6.

3

Judges Mentz,[3] and Clement,[4] and Magistrate Judges Kirk[5] and Hornsby,[6] rather than speculate as to whether plaintiff may one day be allowed to join a nondiverse defendant, see Section II, infra, the Court will deal solely with the facts before it. Those facts require this Court to find that remand is not appropriate because complete diversity exists as between the named parties in the Petition, namely, the Louisiana plaintiff and named defendants, GSK and Wyeth.[7] The Court declines to accept plaintiff's proposition that a mere allegation of medical negligence in her Petition is sufficient to destroy diversity, and thereby divest this Court of jurisdiction. See Plaintiff's First Suppl. and Amending Petition, ¶IV.

## II. Motion for Leave to Amend Petition.

Hedgepeth alternatively seeks leave to amend her Petition to name the nondiverse health care provider and his Louisiana insurer as defendants. Having noticed a court's inability to rule on a motion for leave to amend without providing the proposed pleading, but failing to heed the advice of Magistrate Judge Hornsby in McQuiston, supra,[8] plaintiff has attached her proposed amended

---

[3] See Maquar v. Synthes Ltd., 1992 WL 111199 (E.D.La. 1992).

[4] See Lillie v. Wyeth-Ayerst Laboratories, 1994 WL 532091 (E.D.La. 1994).

[5] See Harris v. Brecher, 2007 WL 1296349 (W.D.La. 2007); see also Audrisch v. Ethicon, Inc., 2002 WL 32151749 (W.D.La. 2002).

[6] See McQuiston v. Boston Scientific Corp., 2008 WL 104210 (W.D.La. 2008).

[7] The Court notes that any argument regarding fraudulent or improper joinder is inapplicable here as that "doctrine simply does not apply to defendants who are joined after an action is removed, for in such cases, the defendants have a chance to argue against joinder before the court grants leave to amend." Cobb v. Delta Exports, Inc., 186 F.3d 675, 678 (5th Cir. 1999).

[8] Plaintiff's counsel in McQuiston, supra, is also plaintiff's counsel of record in the matter presently before the Court. In McQuiston, supra, Magistrate Judge Hornsby aptly explained that:

> Any effort to amend and add the healthcare providers [while the plaintiffs' medical

4

petition for this Court's review.

Under 28 U.S.C. §1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." As plaintiff seeks to join defendants whose joinder would divest the Court of jurisdiction, this Court must closely scrutinize such an amendment. See Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987), cert. denied, 493 U.S. 51 (1989).[9]

The Fifth Circuit has explained that when confronted with an amendment to add a nondiverse, dispensable party,[10] the district court should use its discretion in deciding whether to allow the party to be added. Id. The Hensgens Court directed district courts to consider a number of nonexclusive factors to balance the original defendants' interest in maintaining a federal forum

---

>malpractice claims remain in the administrative review phase] would likely receive objection based on the futility of adding defendants who possess a solid prematurity defense, and leave would almost certainly be denied. Once Plaintiffs have completed the medical review process and the malpractice claims are ripe for judicial presentation, Plaintiffs will be free to file a motion for leave to amend, and it will be assessed under the factors discussed in Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir.1987) and with an eye toward any schedule that has been set in this case. It is premature to conduct that analysis at this time.

2008 WL 104210, *2.

[9]Hensgens, supra, was decided before §1447 was amended to include subsection (e). However, the Fifth Circuit continues to cite Hensgens with approval. See e.g., Hawthorne Land Co. v. Occidental Chemical Corp., 431 F.3d 221, 227 (5th Cir. 2005). In fact, "other courts have opined that §1447(e) . . . is a codification of Hensgens's holding." Cobb, 186 F.3d at 677 (citations omitted).

[10]See Temple v. Synthes Corp. Ltd., 498 U.S. 5, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (allowing medical products liability claim to proceed in federal court even though the plaintiffs chose to file their medical malpractice claims against the doctor and hospital in state court following completion of the Louisiana administrative process based on finding that joint tortfeasors need not be named as defendants in a single lawsuit).

5

against the plaintiff's interest in avoiding multiple and parallel litigation: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factor bearing on the equities. Id.

Hedgepeth asserts that her filing the administrative action against Dr. Rushing in compliance with the LMMA prior to and in close temporal proximity with the lawsuit against GSK and Wyeth "affirms that plaintiffs are not adding the health care providers to defeat diversity." Plaintiff's Mem. in Support, p. 13. In opposing plaintiff's motion, GSK avers that unless and until plaintiff exhausts the LMMA's administrative remedy against Dr. Rushing, plaintiff has no colorable claim against him. This Court agrees.

The Cobb Court has explained, in dicta, that leave to amend to join a party "against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction ... would never be granted." 186 F.3d at 678. It is undisputed that Dr. Rushing is a qualified health care provider covered by the LMMA. See Plaintiff's Mem. in Support, p. 6. Even if this Court were to allow plaintiff to amend her Petition to add Dr. Rushing and then, as required by §1447(e), remand this matter, Dr. Rushing would most assuredly be dismissed upon approach to the Caddo Parish Courthouse steps based on prematurity. See Yokem v. Sisters of Charity of the Incarnate Word, 742 So.2d 906, 909 (La. App. 2d Cir. 1999) ("If an action against a covered health care provider has been commenced in the district court before the complaint has been presented to a medical review panel, an exception of prematurity **must** be sustained and the claimant's suit **must** be dismissed."(emphasis added)).

Plaintiff asserts products liability claims against GSK and Wyeth. Thus, issues against GSK

6

and Wyeth will focus, for example, on whether the medications Effexor and Paxil were unreasonably dangerous in design, and whether GSK and Wyeth failed to provide an adequate warning after allegedly discovering the drugs' potential dangers to consumers. See Plaintiff's First Suppl. and Amending Petition, ¶¶12, 14; see also La. R.S. 9:2800.54, 9:2800.56 and 9:2800.57. On the other hand, plaintiff's medical malpractice claims against her husband's prescribing physician will focus on, among other issues, whether Dr. Rushing's prescribing various medications for Wesley Hedgepeth, including Effexor and Paxil, complied with the standard of care ordinarily employed, under similar circumstances, by members of his profession in good standing in the same community or locality. See Plaintiff's Proposed Second Suppl. and Amending Petition, ¶¶22-25; see also La. R.S. 40.1299.41(A)(7).

Plaintiff's claim against Dr. Rushing being so distinct from the claims asserted against the diverse defendants, and plaintiff's attempt to name Dr. Rushing as a defendant only **after** this matter was removed, knowing that the procedural bar to a claim against Dr. Rushing has yet to be lifted, suggests that the primary purpose of the amendment is to defeat jurisdiction.

Hedgepeth asserts that she will suffer significant injury in the form of overly burdensome litigation expenses if amendment is not permitted. This Court finds otherwise. As explained above, plaintiff's claims against GSK and Wyeth are different from her claim against Dr. Rushing and his insurer; the issues are different, as is the relevant evidence. Hedgepeth is not precluded from filing a separate suit against Dr. Rushing in state court, nor is she precluded from again seeking leave to amend in this Court once the LMMA administrative remedies are exhausted.

The Court finds that the other considerations "bearing on the equities" also weigh in favor of denying leave to amend. Under Louisiana law, plaintiff's pursuit of a medical negligence claim

7

requires that she first proceed through the medical review panel process which could take months to years to complete. Plaintiff's claim against Dr. Rushing is not vital to the resolution of plaintiff's claims against GSK and Wyeth. Although all of plaintiff's claims arise from the same set of facts, the legal bases are different. This Court can think of very few reasons, if any, why the question of GSK and Wyeth's liability, or lack thereof, should hang in limbo while awaiting the decision of the medical review panel.

After having weighed the Hensgens factors, as explained above, the Court finds that leave to amend to add nondiverse defendants is not warranted at this time.

### III.  MOTION TO STAY THE PROCEEDINGS.

Hedgepeth also alternatively asks for a stay of this federal action pending the completion of the medical review process. Plaintiff asserts that she would be highly prejudiced not only financially but mentally and emotionally as well.

First, defendants would be prejudiced by the delay of this lawsuit. Stay of this matter will hinder defendants' discovery efforts, and, as pointed out by Judge Clement in Lillie, supra, defeat the purpose of the prescriptive period provided by Louisiana law. A stay will also delay defendants' ability to seek summary disposition of the suit.

Second, as explained above, plaintiff's medical malpractice claim is distinct from her product liability claims. Discovery conducted in this suit and in the medical review panel process will, to a great extent, address different issues. To the extent discovery overlaps, both plaintiff and defendants have noted that depositions are routinely cross-noticed, and discovery conducted accordingly, in the medical review proceeding and product liability action to avoid doubling the burden of discovery. See Plaintiff's Mem. in Support, p. 5; see also Defendants' Opp., p. 15.

Third, as noted above, after the procedural bar of suit against Dr. Rushing has been lifted, plaintiff may again seek leave to amend her Petition. If, in this Court's discretion, such leave is deemed to be appropriate and this matter is remanded, the discovery obtained herein during the pendency of the medical review proceeding can always be used in the state court proceeding. Thus, no time is lost for any party.

Finally, there is no guarantee that after receiving the decision of the medical review panel plaintiff will actually want or need to join Dr. Rushing: if the medical review panel decision is in favor of Dr. Rushing, plaintiff may wish to cut her losses and focus solely on GSK and Wyeth; on the other hand, if the decision is in favor of plaintiff, Dr. Rushing may wish to cut his and settle. See Everett v. Goldman, 359 So.2d 1256, 1264 (La. 1978) (discussing purpose of pre-trial screening through a medical review panel).

Neither this Court nor the parties can predict what will transpire. In the meantime, the Court finds that the interests of all of the parties will best be served by moving forward rather than sitting idle. Thus, plaintiff's motion for stay is also denied.

## CONCLUSION

For the reasons stated above, plaintiff's Motion to Remand [Doc. #7] is **DENIED**, as are plaintiff's alternative Motions for Leave to Amend and to Stay.

/s/ Donald E. Walter
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE